**Pierce Bainbridge Beck Price & Hecht LLP**
Brian J. Dunne (SBN 275689)
*bdunne@piercebainbridge.com*
Dan Terzian (SBN 283835)
*dterzian@piercebainbridge.com*
Max W. Hirsch (SBN 301872)
*mhirsch@piercebainbridge.com*
355 S. Grand Ave., 44th Floor
Los Angeles, California 90071
(213) 262-9333

*Counsel for Plaintiff Tulsi Now, Inc.*

THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Tulsi Now, Inc.**, a principal campaign committee, <br><br> Plaintiff, <br><br> v. <br><br> **Google**, **LLC**, a Delaware limited liability company, and **Does 1–10**, <br><br> Defendants. | Case No. <br><br> **Complaint for Violations of:** <br><br> 1. **First Amendment** <br> 2. **California Constitution Article I, Section 2** <br> 3. **California Unruh Civil Rights Act, Cal. Civ. Code Section 51** <br> 4. **Unfair Competition, Cal. Bus. and Prof. Code Section 17200** <br> 5. **Implied Covenant of Good Faith and Fair Dealing** <br> 6. **Lanham Act – 15 U.S.C. § 1125 *et seq.*** <br> 7. **Declaratory and Injunctive Relief** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Tulsi Now, Inc. ("Tulsi" or the "Campaign"), principal campaign committee for Presidential candidate Tulsi Gabbard, brings this lawsuit against Defendant Google, LLC ("Google") for serious and continuing violations of Tulsi's right to free speech. Since at least June 2019, Google has used its control over online political speech to silence Tulsi Gabbard, a candidate millions of Americans want to hear from. With this lawsuit, Tulsi seeks to stop Google from further intermeddling in the 2020 United States Presidential Election.

## **INTRODUCTION**

1.     We live in a time of unprecedented political upheaval and division in the United States. Uncertainty and mistrust in American institutions—most notably, the United States government—are at record highs. Everything from basic norms of civility and compromise to the sanctity of American elections suddenly seems in flux. Americans wonder how we got here, and they want to know where we're going.

2.     Against this backdrop, it is not surprising that the race for the 2020 Democratic nomination for President of the United States is the most hotly contested—and the most politically open—in recent memory. Americans want to hear fresh, diverse voices as they seek a new leader in this time of turmoil. Americans ***need*** to hear those voices.

3.     Tulsi Gabbard is one of those voices. Gabbard is a four-term United States Congresswoman, a Major with over sixteen years in the National Guard, and the first female combat veteran to run for President.

4.      In the June 26-27, 2019 Democratic Party presidential debates, tens of millions of Americans got to hear Tulsi Gabbard's voice for the first time. And people liked what they heard: Gabbard quickly became the most searched-for Democratic presidential candidate on June 27-28. In the crucial post-debate period—a time when presidential candidates receive outsize interest, engagement, and donations—Americans around the country wanted to hear more from Tulsi Gabbard.

5.      To speak to these Americans, Tulsi operated a Google Ads account (the "Account"). A Google Ads account allows a political candidate to speak directly to people who want to hear from her. For example, millions of people were searching for information on Tulsi Gabbard on June 27-28, 2019. Through Google Ads, Tulsi could instantaneously and directly speak to these people by linking them to her webpage, which provides information about Gabbard's background, policies, and goals.

6.      Or at least that is how things are *supposed* to work on Google's search platform—one of the largest forums for political speech in the entire world. In practice, however, Google plays favorites, with no warning, no transparency—and no accountability (until now).

7.      On June 28, 2019—at the height of Gabbard's popularity among Internet searchers in the immediate hours after the debate ended, and in the thick of the

**Complaint – Tulsi Now, Inc. v. Google, LLC**

critical post-debate period (when television viewers, radio listeners, newspaper readers, and millions of other Americans are discussing and searching for presidential candidates), Google suspended Tulsi's Google Ads account without warning.

8.    For hours, as millions of Americans searched Google for information about Tulsi, and as Tulsi was trying, through Google, to speak to them, her Google Ads account was arbitrarily and forcibly taken offline. Throughout this period, the Campaign worked frantically to gather more information about the suspension; to get through to someone at Google who could get the Account back online; and to understand and remedy the restraint that had been placed on Tulsi's speech—at precisely the moment when everyone wanted to hear from her.

9.    In response, the Campaign got opacity and an inconsistent series of answers from Google. First, Google claimed that the Account was suspended because it somehow violated Google's terms of service. (It didn't.) Later, Google changed its story. Then it changed its story again. Eventually, after several hours of bizarre and conflicting explanations while the suspension dragged on, Google suddenly reversed course completely and reinstated the Account. To this day, Google has not provided a straight answer—let alone a credible one—as to why Tulsi's political speech was silenced right precisely when millions of people wanted to hear from her.

10.    But in context, the explanation for Google's suspension of the Account at *exactly* the wrong time is no great mystery: Google (or someone at Google) didn't want Americans to hear Tulsi Gabbard's speech, so it silenced her. This has happened

time and time again across Google platforms. Google controls one of the largest and most important forums for political speech in the entire world, and it regularly silences voices it doesn't like, and amplifies voices it does.

11.    And Google's election manipulation doesn't stop with its search platform. For example, Google's email platform Gmail sends communications from Tulsi into people's Spam folders at a disproportionately high rate. In fact, Gmail appears to classify communications from Tulsi Gabbard as Spam at a rate higher than other similar communications—for example, those from other Democratic presidential candidates. There is no technical explanation for this disparity.

12.    Google's arbitrary and capricious treatment of Gabbard's campaign should raise concerns for policymakers everywhere about the company's ability to use its dominance to impact political discourse, in a way that interferes with the upcoming 2020 presidential election. In this case, Google has sought to silence Tulsi Gabbard, a presidential candidate who has vocally called for greater regulation and oversight of (you guessed it) Google. But this could happen to any candidate running in any election.

13.    With this lawsuit, Tulsi is fighting back. She will be heard.

14.    By acting to silence Gabbard at exactly the moment when her speech was most important, and most ready to be heard—and in the single most politically charged context in the United States, a presidential election campaign—Google violated the Campaign's federal and State rights to free speech.

**Complaint – Tulsi Now, Inc. v. Google, LLC**

15.     Through its illegal actions targeting Tulsi Gabbard, Google has caused the Campaign significant harm, both monetary (including potentially millions of dollars in forgone donations) and nonmonetary (the ability to provide Tulsi's important message with Americans looking to hear it). But even more pressing is the ongoing threat of targeted intermeddling in the 2020 United States presidential election by Google—an out-of-control tech giant looking to play favorites unless enjoined by this Court.

16.     The Campaign seeks declaratory and injunctive relief against Google for its illegal behavior, and damages of no less than $50 million.

## JURISDICTION AND VENUE

17.     This Court has original subject matter jurisdiction under 28 U.S.C. § 1331 over the First Amendment and Lanham Act claims which arise under the laws of the United States. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the California state claims, which share a common nucleus of facts with the federal claims in this matter.

18.     This Court has personal jurisdiction over Google. Google is pervasively present in California and in this judicial district, and is subject to general personal jurisdiction throughout this State.

19.     Venue is proper in this District under 28 U.S.C.  §§ 1391(b)(1), (b)(2), and (c). Google has a large office in Venice, California within this judicial district, which houses engineering, sales, and marketing operations for Google Ads, such that

**Complaint – Tulsi Now, Inc. v. Google, LLC**

1    it is both a resident of this district for venue purposes with respect to this matter and

2    a substantial portion of the events and actions giving rise to the claims in this matter

3    took place in this judicial district.

4    **PARTIES**

5    20.    Plaintiff Tulsi Now, Inc. is a principal campaign committee for Tulsi

6    Gabbard, a candidate for President of the United States.

7    21.    Defendant Google, LLC is a Delaware limited liability company with a

8    principal place of business in Mountain View, California. Google regularly conducts

9    business throughout California and in this judicial district—for example, at its large

10   Venice, California offices, which house Google Ads engineering, marketing, and

11   sales operations.

12   22.    The true names and capacities, whether individual, corporate, associate,

13   or otherwise, of Defendants Does 1 through 10, inclusive, are presently unknown to

14   Plaintiff, and for that reason these defendants are sued by such fictitious names.

15   Plaintiff is informed and believes and thereon alleges that each of the Doe defendants

16   is in some way legally responsible for the violations of law and injuries and harm

17   caused as alleged herein. If and when appropriate, Plaintiff will seek leave of court

18   to amend this complaint when the true names and capacities of said defendants are

19   known.

20

21

22

23

24

**Complaint – Tulsi Now, Inc. v. Google, LLC**

# FACTS

### A.    Tulsi Gabbard's Background and Message

23.    Tulsi Gabbard is a four-term United States Congresswoman, a Major in the National Guard and military combat veteran of Iraq, and a skilled surfer. Gabbard is running for President of the United States as a member of the Democratic Party.

24.    Gabbard's presidential campaign is the culmination of a long career of public service and a desire to step up when called upon for duty. As a child, Gabbard's parents would enlist her and her siblings in "service days," where the family would pick up litter from beaches or prepare food for homeless families. At the age of 21, Gabbard began serving in the Hawaii State Legislature. After the United States was attacked by terrorists on September 11, 2001, Gabbard enlisted in the Army National Guard, and served two deployments to the Middle East as a soldier.  After fighting in Iraq, Gabbard returned to Hawaii to serve on the Honolulu City Council. And today, Gabbard continues to serve—now as a fourth-term United States Congresswoman and as a Major in the National Guard with sixteen years of service.

25.    During her career in Congress, Gabbard has moved to limit the power of big tech companies like Google and has fought to keep the internet open and available to all. Gabbard has co-sponsored legislation that prohibits multi-tiered pricing agreements for the privileged few, and she has spoken in favor of reinstating and expanding net neutrality to apply to Internet firms like Google.

26.    Gabbard has repeatedly voiced her concerns about the power wielded by Google and other Big Tech firms on Twitter:





27.    Google is well aware of Gabbard's policies and actions while in Congress—and of her plan to rein in Silicon Valley's excesses as President.

9

**B.      Tulsi Gabbard's Google Ads Account**

28.     Tulsi Gabbard's message is resonating with the American people. After the June 26-27, 2019 Democratic debate—when millions of Americans heard Gabbard's message for the first time—she was the single most searched-for candidate. And, she accomplished this despite having the third-lowest amount of speaking time.

29.     In order to share her message with the American people, which had already been demonstrated to increase her popularity, the Campaign created a Google Ads account with Google. The Account was governed by terms of use. Among other provisions, the terms provided that Google had the right to "reject or remove a specific Target, Ad, or Destination at any time for any or no reason."

30.     Gabbard opened the Account because Google operates one of the largest forums for speech in the world. It operates the largest search engine in the world and the largest advertising platform.

31.     Google has a monopoly over the Internet search market. Over 88% of all Internet searches in the United States occur on Google.  Over 92% of all Internet searches worldwide occur on Google. Google averages at least 6 billion searches a day.  Google ads can reach people on YouTube, which is owned by Google.[1] They can also reach people on the "Google Display Network," a group of more than 2

_____

[1] The total number of people who currently use YouTube alone exceeds 1.3 billion people, and more than 30 million members of the general public visit the platform every day.

**Complaint – Tulsi Now, Inc. v. Google, LLC**

million websites, videos, and apps where Google ads can appear. The Google Display Network reaches "90% of internet users worldwide," with more than a trillion impressions served over 1 billion users every month. In short, Google controls the ability to be heard by a substantial portion of the country, and the world, on the Internet.

32.     Simply put, Google's services, including its search, search advertising, and email services, have become an important—indeed, necessary—forum for Americans' exercise of their freedom of speech. On that subject, the United States Supreme Court recently recognized that "the most important place[] (in a spatial sense) for the exchange of views . . . is cyberspace – the 'vast democratic forums of the Internet.'" *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017).

33.     For all these reasons, the Campaign relied on Google—and on the Account—to promulgate Tulsi Gabbard's political message in the critical post-debate period in late June 2019.

**C.     Google Abruptly Suspends Tulsi Gabbard's Google Ads Account**

34.      On June 28, 2019, right in the heart of a key post-debate campaigning and fundraising period for Gabbard, the Campaign witnessed Internet searches for Gabbard start skyrocketing in real time. Millions of Americans wanted to hear from Tulsi Gabbard, and they went to Google to hear what she had to say.

35.     The Campaign wanted to speak to the millions of Americans asking about Gabbard through Google. It wanted to answer their questions about Gabbard,

and to amplify Tulsi's message. So the Campaign purchased ads to display when people searched Google for certain terms relating to Gabbard.

36.     Except in late June 2019, on the exact day when millions of Americans turned to Google to learn more about Gabbard—on the exact day when Americans made Tulsi Gabbard the most searched-for Democratic candidate on Google— Google abruptly suspended the Account.

37.     On June 28, 2019, millions of Americans asked Google about Tulsi Gabbard. Tulsi sought to answer them. But Google silenced her.

38.     Despite the drastic nature of Google's action—arbitrarily suspending the advertising account of a major candidate for President of the United States the day after a debate, at precisely the moment that candidate was trending on Google— Google never offered a real (or consistent) reason for suspending the Account. First, Google said that the Account was suspended due to "problems with billing information or violations of our advertising policies." Then Google said the Account was suspended because Google "identified suspicious behavior in the payment activity in your account." Later, Google changed course again and said the Account was "temporarily suspended to verify your billing information and policy compliance." Eventually, Google lifted the suspension with no real explanation, just an opaque statement that Google had "re-reviewed your account and you can now use it to advertise."

39.    To this day, Google has yet to credibly explain why it suspended the Account—let alone at the precise moment that Gabbard was trending across Google's search and media platforms.

40.    But even though Google couldn't explain *why* it was silencing Tulsi—a prominent Google critic—right as her presidential bid began picking up steam on Google, it certainly didn't reverse course any time soon. Instead, for hour after hour, as people throughout the country searched for Tulsi Gabbard, and after the Campaign had promptly reached out to Google for explanation and reinstatement of the Account, the suspension continued. Over the course of several hours, Google simply refused to engage with a major presidential candidate whom it had unilaterally silenced, just as she was trending across the Internet.

41.    Google's suspension of the Account caused irreparable damage to the Campaign. Interest and searches for Gabbard during the post-debate timeframe had skyrocketed. Ads directing searchers to her campaign page would have brought Tulsi Gabbard's unique message to millions of Americans—and would have undoubtedly increased the campaign donations Gabbard received. Presidential primary candidates can receive millions of dollars in donations in the hours shortly after a debate. While the Account was suspended, Gabbard was incapable of communicating to voters through Google or its affiliated websites—by far the most effective, and important, method of communication in the Campaign's arsenal.

**Complaint – Tulsi Now, Inc. v. Google, LLC**

42.     Additionally, Gabbard has learned that email communications sent by the Campaign are classified as Spam by Google's Gmail product at disproportionately high rates. Few Gmail users regularly check their spam folders. Many never do. Gmail's Spam filter—which relies on secret algorithms designed and controlled entirely by Google—go out of their way to silence messages from the Campaign, further hindering Tulsi's ability to convey her message to the American people.

43.     These actions by Google did not just prevent Gabbard and the Campaign from reaching voters, they also hindered voters from associating with a candidate whose views matched their own. In other words, as evidenced by the massive search hits for Gabbard after the debate, voters were drawn to Gabbard and her views, and attempted to associate with her politically online (online searches for candidates regularly lead to donations, signing up for email lists, signing up to volunteer, or at minimum engaging with those candidates' websites and social media). But Google's actions toward Tulsi—from suspending the Account to disproportionately sending the Campaigns emails to Spam in Gmail—not only hinder Gabbard's message, they directly touched on the associational rights of likely voters as well.

D.     **Google's Political Support of Its Policy Champions**

44.     Google's stated mission is "to organize the world's information and make it universally accessible and useful." According to Google, "people around the world turn to Search to find information, learn about topics of interest, and make important decisions." Consistent with this mission, Google provides a forum for

members of the public to interact, share ideas, and engage in important topics across the country and the globe.

45. But this mission is not executed equally. Google does not treat all political viewpoints equally. The company has been criticized by many on the right for censoring content that favors conservative viewpoints. However, Google's favoritism of political and policy ideas is more nuanced and self-serving. Simply put, Google supports viewpoints, political causes, and candidates that favor its policy positions over those that do not.

46. For example, Google-affiliated donors gave $817,855 to Barack Obama's presidential candidacy in 2008, which ranked sixth among all donations to Obama's campaign. In 2012, that number was $804,240, which ranked third. Google did not even rank in the top twenty donors for Obama's Republican opponents in either election. The Obama Administration's close ties to Google are now well-known: During Obama's two terms in office, Google officials met with the White House on more than 427 occasions, while at least fifty-three officials moved between Google and the White House and vice versa. Not surprisingly, the Obama Administration championed many of the top policies on Google's wish list, while Obama's Federal Trade Commission closed its antitrust investigation of the company without any meaningful sanctions.

47. The disparity grew even more stark during the last presidential election. Google employees gave $1.3 million to Hillary Clinton's presidential campaign,

compared with $26,000 to the Trump campaign. What's more, Eric Schmidt, the chairman of Alphabet (Google's parent company), counseled Clinton on strategy during her presidential campaign, and financed Civis Analytics, a startup which provided data and other technology for her campaign. Robert Epstein, a social psychologist and Internet researcher, argues persuasively that Google's pro-Clinton search bias may have shifted as many as 2.6 million votes to Clinton during the 2016 election.

48.    After President Trump won the election, an internal Google video leaked showing Google's co-founder Sergey Brin, its CEO Sundar Pichai, and other high-ranking Google officers speaking, with dismay, about Trump's election victory. Their alarm may have been well-founded: In May of this year, Trump's Department of Justice announced it was exploring whether to open a case against Google for potential antitrust violations.

49.    Now that Google is facing increased antitrust scrutiny, Google has made common cause with the conservative Koch Foundation, funding several conservative groups in the Koch network to publish op-eds, studies and white papers opposing antitrust investigations of Big Tech.

50.    Public information shows that Google manipulates its advertising policies and perhaps even its search results based on political concerns and policy goals. For example, during Congressional debate in 2018 over the Stop Enabling Sex Traf-

fickers Act (SESTA)—legislation that would hold online services liable for know-ingly assisting or facilitating online sex trafficking—Google search results consist-ently returned links to content opposed to the legislation. Google strongly opposed the measure. Even today, the top result when searching for "SESTA" remains a link to http://stopsesta.org, sponsored by the Electronic Frontier Foundation, a group which Google supports financially.

51.     More recently, Google employees engaged in an internal lobbying cam-paign to block Breitbart from Google's advertising program. As part of this internal lobbying campaign, one Google employee pressed that "[t]here is obviously a moral argument to be made [to blocking Breitbart] as well as a business case." While it's not entirely clear what "business case" the Google employee was referring to, it's important to note that Breitbart has been among Google's staunchest critics, alleging that the company routinely censors conservative viewpoints.

52.     While there is no law against a company's employees engaging in po-litical activity, Google is no ordinary company. As a result of its power, it helps to run elections with its search results and ad offerings, including exercising unilateral control over nearly all Internet search and search advertising—perhaps the single most important platform through which presidential primary candidates communi-cate with potential voters, and vice versa. Quite simply, Google could unilaterally and decisively end a presidential candidate's bid for office if it chose to—for exam-

**Complaint – Tulsi Now, Inc. v. Google, LLC**

ple, by tweaking its search algorithm to disfavor the candidate; or blocking the candidate from its ad platforms; or keeping the candidate's communications from getting to interested voters who use Gmail for email communications.

53.    And, in fact, the above is exactly what Google has done, and likely will continue to do, to disfavor the presidential candidacy of Tulsi Gabbard, one of the few independent voices within the Democratic party and vocal critic of Google. Google has manipulated its search advertising, and likely its email filtering, to disfavor Gabbard. What is next, if not enjoined by a Court?

**E.    The Government's Inexcusable Inaction in Ceding the Internet to Google**

54.    Notably, Google did not ascend to its position as a central arbiter of political speech in a vacuum. Instead, the United States government's inexcusable inaction has ceded control of the Internet—a public forum for all to express their opinions—to private companies like Google.

55.    The United States government knows that the Internet is integral to ensuring a free and democratic country. The government also knows that private companies such as Google have been censoring and limiting those freedoms.

56.    For years, the government has known that companies like Google are a threat to speech.  For example, in 2012, the Federal Trade Commission staff found that "Google has unlawfully maintained its monopoly over general search and search advertising, in violation of Section 2, or otherwise engaged in unfair methods of

1  competition, in violation of Section 5 [of the Federal Trade Commission Act]." The

2  FTC staff based its conclusion on three illegal acts by Google, one of which specif-

3  ically related to Google's "restrictions" on "management of advertising campaigns."

4  FTC staff recommended filing a complaint against Google. Yet the government hid

5  the conclusions and declined.

6

7      57.    Other disturbing data points about the power wielded by Google and

8  other major tech companies like Facebook have emerged in recent years. In the early

9  2010s, the FCC rightly considered whether net neutrality regulations, which sought

10  to provide equal access to the Internet by governing Internet Service Providers,

11  should also be extended to apply to Internet content platforms like Google.

12      58.    However, during the Trump presidency, the FCC has not only declined

13  to extend net neutrality protections to apply to Internet content platforms like

14  Google, it has revoked those regulations that were already existing. *See In the Matter*

15  *of Restoring Internet Freedom*, 33 F.C.C. Rcd. 311 (2018); *United States Telecom*

16  *Ass'n v. FCC*, 825 F.3d 674, 729 (D.C. Cir. 2016). Companies like Google have more

17

18  leeway and ability than ever to bend the Internet to their will.

19      59.    And Big Tech companies have used this unchecked power to meddle in

20  political speech. For example, in March 2019, Facebook removed numerous adver-

21  tisements placed by the presidential campaign of Senator Elizabeth Warren that

22  called for the breakup of Facebook and other tech giants. Only after the media pub-

23  licly exposed Facebook's actions did it reverse course.

24

60.     The government's inexcusable inaction not only failed to stop, but actively enabled, Google's dangerous rise to power over political speech central to our body politic. The United States government has ceded the forum for much of America's core political speech—and for key aspects of our elections themselves—to Google. And Google has shown itself to be anything but neutral.

**F.      Google's Interference with Election Advertising and Electoral Speech**

61.     In addition to Google's overarching control over, and restrictions on, American political speech generally, Google has a unique and disturbing amount of influence over—and interest in—elections. In fact, through its search, search advertising, and other monopolistic platforms, Google has almost total control over important aspects of election speech and election advertising. And Google is willing to exploit its control—as can be seen in Google's targeting of Tulsi Gabbard, a political opponent of the company, through the Account.

62.     In fact, Gabbard's Account is not the first election advertising that Google has interfered with. For example, in June 2018, Google announced that it would no longer sell political ads for local races in Washington state. Yet in reality, Google continued to sell such ads—thousands of dollars' worth, in fact—but ***only to certain campaigns***.

63.     In short, Google's alleged ban on ads for local races in Washington state was selectively enforced. This misconduct ultimately resulted in the Washington

**Complaint – Tulsi Now, Inc. v. Google, LLC**

state attorney general prosecuting Google, and Google settled case, agreeing to pay $217,000 to resolve its liability.

\* \* \*

64.     Google has established a clear trend of using its power over speech to favor certain political viewpoints over others. For example, since June 2019, Google has used its unique control over political advertising and election speech to try to silence Tulsi Gabbard, a presidential candidate who has spoken out against Google.

65.     But Tulsi will not be silenced. Google is trying to change the outcome of an American presidential election, and the government has been unwilling and unable to do anything about it. This action seeks to change that.

## COUNT ONE
### (Violations of the First Amendment to the U.S. Constitution)

66.     The Campaign realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

67.     The First Amendment to the United States Constitution protects the freedom of speech and association, and protects against viewpoint discrimination in the access and use of public spaces, quasi-public spaces, and limited public spaces. It also protects the rights of all Americans to freely associate with others.

68.     Google creates, operates, and controls its platform and services, including but not limited to Google Search, Google Ads, and Gmail as a public forum or its functional equivalent by intentionally and openly dedicating its platform for public use and public benefit, inviting the public to utilize Google as a forum for free

speech. Google serves as a state actor by performing an exclusively and traditionally public function by regulating free speech within a public forum and helping to run elections. Accordingly, speech cannot be arbitrarily, unreasonably, or discriminatorily excluded, regulated, or restricted on the basis of viewpoint or the identity of the speaker on Google's platform.

69.     Google's actions, and the actions of its agents, deprive the Campaign of its constitutional rights.  Google has restricted the Campaign's speech and expressive conduct by adopting and applying subjective, vague, and overbroad criteria (the "Subjective Criteria") that give Google unfettered and unbridled discretion to censor speech for arbitrary, capricious, or nonexistent reasons. The Subjective Criteria fail to convey a sufficiently definite warning to the Campaign (or the public) as to what is prohibited or restricted and, as a result, they allow Google to censor speech at its whim and based on subjective animus towards the speaker and/or her particular political or religious viewpoint.

70.     Google applies the Subjective Criteria as a pretext to censor and restrict the Campaign's speech, based not on the content of the speech but because of Tulsi Gabbard's identity and political viewpoints. Google has restricted the Account, but has not restricted similar Google Ads accounts for other presidential candidates. Google's application of Subjective Criteria and corresponding restraints on the Cam-

paign's speech is arbitrary and capricious, and/or is based on political or other animus towards the identity and viewpoints of the speaker (*i.e.*, the Campaign), not the actual content of the speech.

71.    Further, because Google's actions impeded the Campaign's ability to associate, at a crucial political moment, with voters who feel similarly to Tulsi Gabbard on important issues, Google's actions impinge on and violate the Campaign's rights to free association and assembly. Google's actions also violate the Campaign's rights to free association and assembly by blocking potential voters' access to information and messages from Account. And Google's actions were done with the intent to deprive the Campaign—like other voices critical of Google—of their First Amendment rights.

72.    No compelling, significant, or legitimate reason justifies Google's speech-restricting actions towards the Campaign (e.g., suspending the Account; manipulating Gmail Spam algorithms to target communications from Tulsi). Even if some interests did exist to justify Google's suspension rules generally, the restrictions imposed on the Campaign's speech are not narrowly or reasonably tailored to further such interests. Given Google's monopolistic control over the internet, the Campaign has no alternative channel affording a reasonable opportunity to reach its full intended audience.

73.    Google's discriminatory policies are not (and its discriminatory application of those policies is not) viewpoint neutral; they are unreasonable in time,

1    place, and manner; and they are unreasonable in relation to the nature, purpose, and

2    use of the forum. They impose an unreasonable restraint on the Campaign's pro-

3    tected political speech, motivated by impermissible discrimination against the Cam-

4    paign's identity and viewpoint.

5        74.    As a direct and proximate result of Google's violations of the clearly

6    established law of public forums, Gabbard and the Campaign have suffered and con-

7    tinue to suffer immediate and irreparable injury in fact, including lost income, de-

8    creased viewership and engagement, and damage to brand and reputation, for which

9

10   there exists no adequate remedy at law.

11       75.    Google's wrongful actions were taken with oppression, fraud, or mal-

12   ice. These actions were arbitrary and capricious. And they were taken as part of

13   Google's normal course of business, effectuated through both Google-designed al-

14   gorithms and Google employees and agents.

15
                         **<u>COUNT TWO</u>**
16           **(California Constitution, Article I, section 2)**

17       76.    The Campaign realleges and incorporates by reference each of the pre-

18   ceding paragraphs as if fully set forth herein.

19
         77.    Article I, section 2 of the California Constitution protects the liberty of
20
     speech and association, especially in public, quasi-public, and limited public spaces.
21

22       78.    Google has created and maintained a public forum for the public to ex-

23   press and exchange views and ideas, or in the alternative has created a quasi or lim-

24

**Complaint – Tulsi Now, Inc. v. Google, LLC**

ited public forum. Google acts as a state actor because Google performs an exclusively and traditionally public function by regulating free speech and controlling the access of political candidates like Gabbard to their constituents, thereby controlling the circumstances of and speech within elections. Accordingly, speech in Google's public forums cannot be arbitrarily, unreasonably, or discriminatorily excluded, regulated, or restricted on the basis of viewpoint or the identity of the speaker.

79.     The content of the Account, which was designed to inform the voting public of Gabbard's candidacy and encourage its support of her, constitutes political speech and activity protected by Article I, section 2 of the California Constitution.

80.     Google has restricted the Campaign's political speech based on a pretext, and has used its terms of use and Subjective Criteria to discriminate against Plaintiff. This censorship is not based on the content of the censored speech, or the violation of any objective guidelines, but is instead based on Gabbard's political viewpoint. Google has restricted the speech of the Campaign on its platforms, but has not similarly restricted the speech of any other major Democratic candidate. Google's restriction of the Campaign is arbitrary and capricious and/or is based on political, religious, or other animus towards the identity and viewpoints of the speaker, not the actual content of the speech.

81.     No compelling, significant, or legitimate reason justifies Google's actions. Even if such interests did exist to justify Google's rules generally, the restrictions imposed on the Campaign's speech are not narrowly or reasonably tailored

1  to further such interests. Given Google's control of the Internet search and search
2  advertising markets (as well as the pervasiveness of the Gmail platform), the Cam-
3  paign has no alternative affording it a reasonable opportunity to reach its full in-
4  tended audience.

5      82.    Google's discriminatory policies are not (and its application of these
6  polices is not) viewpoint neutral. These discriminatory policies are unreasonable in
7  time, place, and manner, and they are unreasonable in relation to the nature, purpose,
8  and use of Google's forums (e.g., Google Search and Google Ads). Google's dis-
9  criminatory policies impose an unreasonable prior restraint on the Campaign's pro-
10  tected political speech, motivated by impermissible discrimination against Gab-
11  bard's identity and viewpoint.

13      83.    Google's wrongful actions were taken with oppression, fraud, or mal-
14  ice. These actions were arbitrary and capricious. Google takes its wrongful actions
15  as part of its normal course of business, effectuated through Google-designed algo-
16  rithms and Google's employees and agents. And Google's actions were done with
17  the intent to deprive the Campaign and California voters who want to hear from
18  Gabbard of their rights under the California constitution.

20      84.    As a direct and proximate result of Google's violations of clearly estab-
21  lished law regarding public forums, the Campaign has suffered, and continues to

22

23

24

**Complaint – Tulsi Now, Inc. v. Google, LLC**

1  suffer, immediate and irreparable injury in fact, including lost income, reduced ex-

2  posure, and damage to brand, reputation, and goodwill, for which there exists no

3  adequate remedy at law.

4  **COUNT THREE**
   **(California Unruh Civil Rights Act – Civil Code §§ 51, *et seq.*)**
5

6  85.   The Campaign realleges and incorporates by reference each of the pre-

7  ceding paragraphs as if fully set forth herein.

8  86.   Google hosts business establishments under the Unruh Civil Rights Act,

9  California Civil Code §§ 51 *et seq*. Google grants the public unrestricted access to

10 Google Ads for commercial reasons that are at the core of their business model and

11 the source of virtually all their revenue.

12

13 87.   Despite their promises of neutrality and a diversity of viewpoints,

14 Google engages in a pattern and practice of intentional discrimination in the provi-

15 sion of its services, including discriminating against and censoring the Campaign's

16 speech based not on the content of the censored speech but on the Campaign's po-

17 litical identity and viewpoint. Through the acts complained of herein, Google inten-

18 tionally denied, and aided or incited in denying, the Campaign full and equal accom-

19 modations, advantages, privileges, and services by discriminating against it in ad-

20 ministering and suspending the Account.

21

22 88.   A substantial motivating reason for Google's conduct is Google's sub-

23 jective perception of the Campaign's political identity and viewpoints, as well as

24 those of others with whom the Campaign associated. Google's discrimination

against Plaintiff is arbitrary, capricious, pretextual, and discriminatory. It is also wholly without any legitimate, reasonable business interest, as the content of the Account is completely compliant with the letter and spirit of Google's Terms of Use and Community Guidelines. Google is censoring and treating the Campaign and its Account differently out of animus towards the Campaign's identity and views.

89.     Google's wrongful actions were taken with oppression, fraud, and/or malice, effectuated both through Google-designed algorithms and through Google employees and agents (e.g., manual human review of the Account). Google articulated a pretextual reason to suspend the Account, which was not supported by any factual evidence.

90.     As a direct and proximate result of Google's unlawful discriminatory actions, Plaintiff suffered, and continues to suffer, irreparable injury in fact, including but not limited to lower viewership, lost potential campaign contributions, and harm to Gabbard's Presidential election bid, for which there exists no adequate remedy at law.

91.     Google's violations of the Unruh Civil Rights Act further entitle Plaintiff to recover statutory damages of up to three times the amount of actual damages in an amount to be proven at trial, or a minimum of $4,000 per violation.

## **COUNT FOUR**
**(Business and Professions Code § 17200 *et seq.*)**

92.     The Campaign realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

93.    Google has committed acts of unfair competition, as defined by Business and Professions Code § 17200, by engaging in the practices described above.

94.    Google's policies and practices, and their application of the same to the Campaign, constitute unlawful, unfair, or fraudulent business acts or practices within the meaning of Business and Professions Code § 17200.  Google's policies, as well as their application, violate the policy and spirit of the Unruh Act, the Lanham Act, the California and United States Constitutions, and prior court decisions. Those actions are likely to mislead the public, and do mislead the public, about Plaintiff's views and Google's policies. Advertisers, the voting public, and politicians rely on Google for an open marketplace of ideas and expression, and rely on Google to ensure that only accounts which truly violate policies get suspended.

95.    There is no utility to the public for Google's actions, where those restrictions violate no laws or contractual terms of use and treat Plaintiff and others similarly situated simply because of their perceived politics and identity of their speaker.  And to the extent that any utility to Google's arbitrarily and discriminatorily applied policies did exist, that utility is significantly outweighed by the harm they impose on consumers and the public. Google has alternatives to this conduct that would be less harmful to consumers, but does not adopt or apply them because of their bias against the Campaign and others similarly situated.

96.    As a direct and proximate result of the aforementioned acts, Plaintiff has suffered and continues to suffer, immediate and irreparable injury in fact, including lower viewership, lost potential campaign contributions, and harm to Gabbard's bid for the Presidency of the United States, for which there exists no adequate remedy at law.

97.    Google's wrongful actions were taken with oppression, fraud, and/or malice.

## COUNT FIVE
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

98.    The Campaign realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

99.    The Campaign and Google entered into written contracts in which Google agreed to provide Plaintiff access, hosting, and advertising services to Plaintiff. Those contracts give Google vague, unfettered, and unilateral direction to remove, restrict, de-monetize, or de-emphasize content as Google sees fit.

100.    Implied in those contracts is the implied covenant of good faith and fair dealing. This is particularly true because, in those contracts, Google assumed for itself unilateral and unfettered discretionary control over virtually every aspect of its relationship with the Campaign, control that Google has exercised at its whim, repeatedly and without notice to the Campaign, and without an opportunity for meaningful discussion or appeal. To the extent that those discretionary powers are valid, Google is obligated to exercise them fairly and in good faith.

101.   The Campaign did all or substantially all of the significant things required of it under its agreements with Google, or was excused from having to do those things. The Account did not violate the letter or spirit of any term in the Campaign's contracts with Google.

102.   Google was bound by the implied convent of good faith and fair dealing in their agreements, terms, and policies, not to engage in any acts, conduct, or omissions that would impair or diminish the Campaign's rights and benefits from the parties' agreements. Pursuant to the terms of those agreements, the Campaign was supposed to have equal access to a wide audience to promote its messages and political ideas, and it was in reliance on Google's mission statement that it chose Google Ads. Instead, Google has, by the acts and omissions complained of herein, intentionally and tortiously breached the implied covenant of good faith and fair dealing by unfairly interfering with the Campaign's rights to receive the benefits of those contracts.

103.   The foregoing acts and omissions were engaged in by Google with the knowledge that it was bound to act consistently with the covenant of good faith and fair dealing. Those acts and omissions were not only failures to act fairly and in good faith, but they were acts of oppression, fraud, and malice.

104.   As a direct and proximate result of the aforementioned conduct of Google, the Campaign has suffered and continues to suffer, immediate and irreparable injury in fact, including lower viewership, lost potential campaign contributions,

and harm to Gabbard's election bid for President of the United States, for which there exists no adequate remedy at law.

## COUNT SIX
### (Lanham Act – 15 U.S.C. § 1125 et seq.)

105. The Campaign realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

106. Google is engaged in interstate commerce and competition through hosting, advertising, soliciting, and receiving revenue from advertising.

107. Google engages in a pattern and practice of promulgating knowingly misleading and deceptive advertisements, and of unfairly competing. For example, Google advertises itself as a forum for open expression by diverse speakers. Google unfairly and deceptively misrepresents the nature, characteristics, and qualities of Google's services and commercial activities as an equal and diverse public forum. Google likewise unfairly enhances the image and goodwill of its content, while degrading the Campaign by suggesting that the Account somehow violates its terms of use.

108. Google's false representations and unfair competition deceived, and had a tendency to deceive, substantial segments of Google's audiences, including potential advertisers like the Campaign, and the audience that views ads. As a direct and proximate result of Google's actions complained of herein, the Campaign has suffered, and continues to suffer, immediate and irreparable injury in fact, including

**Complaint – Tulsi Now, Inc. v. Google, LLC**

lower viewership, lost potential campaign contributions, and harm to Gabbard's bid for President of the United States, for which there exists no adequate remedy at law.

109.  Google's wrongful actions were taken with oppression, fraud and/or malice. Google articulated a pretextual reason to suspend the Account, which was not supported by any factual evidence.

### COUNT SEVEN
**(Declaratory and Injunctive Relief)**

110.  The Campaign realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

111.  An actual controversy exists between the Campaign and Google as to whether Google's policies and procedures, and their application thereof, violate the Unruh Civil Rights Act, the Lanham Act, and the United States and California Constitutions. The correct interpretation is that Google's policies and procedures, facially and as applied, violate the Unruh Civil Rights Act, the Lanham Act, and the Campaign's speech and association rights under both the United States and California Constitutions.

112.  Unless the court issues an appropriate declaration of rights, the parties will not know whether Google's policies and procedures, and Google's application of their policies and procedures, comply with the law, including the Federal and State constitutions, and there will continue to be disputes and controversy surrounding Google's policies and procedures and application thereof.

113.   Unless the court issues an appropriate injunction, Google's illegal and unconstitutional behavior will continue, harming both the Campaign and the general public, which has an overwhelming interest in a fair, unmanipulated 2020 United States Presidential Election cycle.

## PRAYER FOR RELIEF

WHEREFORE, the Campaign prays for relief as hereinafter set forth below:

1.   For a declaratory judgment that Google has violated the Campaign's free speech rights, both facially and as applied, under the First Amendment to the United States Constitution, and under Article I, section 2 of the California Constitution;

2.   For an injunction requiring Google to (i) cease and desist capriciously restricting or otherwise censoring the Account, and (ii) from censoring or restricting the Campaign's speech based on Google's unfettered discretion, or the use or application of arbitrary, capricious, vague, unspecified, or subjective criteria guidelines;

3.   For compensatory, special, and statutory damages in an amount to be proven at trial, including statutory damages pursuant to, inter alia, Civil Code §§ 51, 51.5, 52, Civil Procedure Code § 1021.5, 15 U.S.C. § 1117, 42 U.S.C. §§ 1981, 1983;

4.   For a civil penalty of $2,500 for each violation pursuant to Business and Professions Code §§ 17200, 17206, and 17536;

5.   For punitive damages and exemplary damages in an amount to be proven at trial;

1    6.    For restitution of financial losses or harm caused by Google's conduct

2    and in an amount to be proven at trial;

3    7.    For attorneys' fees and costs of suit;

4    8.    For prejudgment and post-judgment interest; and

5    9.    For any and all further relief that the Court deems just and proper.

6

7    Dated: July 25, 2019                  Respectfully submitted,

8                                          **Pierce Bainbridge Beck Price & Hecht LLP**

9

10                                         By: _____ /s/ Brian J. Dunne _____

11                                         Brian J. Dunne (SBN 275689)
                                           *bdunne@piercebainbridge.com*
12                                         Dan Terzian (SBN 283835)
                                           *dterzian@piercebainbridge.com*
13                                         Max W. Hirsch (SBN 301872)
                                           *mhirsch@piercebainbridge.com*
14                                         355 S. Grand Ave., 44th Floor
                                           Los Angeles, California 90071
15                                         (213) 262-9333

16                                         *Counsel for Plaintiff Tulsi Now, Inc.*

17

18

19

20

21

22

23

24

**Complaint – Tulsi Now, Inc. v. Google, LLC**

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiff Tulsi Now demands a trial by jury pursuant to Federal Rule of Civil

3

Procedure 38 and Local Rule 38-1.

4

Dated: July 25, 2019                    Respectfully submitted,

5

**Pierce Bainbridge Beck Price & Hecht
LLP**

6

7

By: _____/s/_____

            Brian J. Dunne (SBN 275689)

8

            *bdunne@piercebainbridge.com*
            Dan Terzian (SBN 283835)

9

            *dterzian@piercebainbridge.com*
            Max W. Hirsch (SBN 301872)

10

            *mhirsch@piercebainbridge.com*
            355 S. Grand Ave., 44th Floor

11

            Los Angeles, California 90071
            (213) 262-9333

12

            *Counsel for Plaintiff Tulsi Now, Inc.*

13

14

15

16

17

18

19

20

21

22

23

24

**Complaint – Tulsi Now, Inc. v. Google, LLC**