DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile:  (650) 565-5100
Email:      dkramer@wsgr.com
            lwhite@wsgr.com

Attorneys for Defendant
GOOGLE LLC

THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TULSI NOW, INC, a principal campaign committee, | CASE NO.: 2:19-cv-06444-SVW-RAO |
| Plaintiff, | **DEFENDANT GOOGLE LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO TRANSFER OR IN THE ALTERNATIVE MOTION TO DISMISS** |
| v. | |
| GOOGLE LLC, a Delaware limited liability company, and Does 1-10, | |
| Defendants. | Hearing Date: January 27, 2020 |
| | Time: 1:30 PM |
| | Judge: Honorable Stephen V. Wilson |
| | Place: First Street Courthouse |
| | Room: Courtroom 10A |

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................2

      A.     Google Ads ...........................................................................2

      B.     Plaintiff Tulsi Now, Inc. and Its Advertising On Google Ads...............3

      C.     Google's Six-Hour Suspension of Plaintiff's Account ..........................4

      D.     Plaintiff's Allegations Regarding Gmail Spam Filtering.......................5

      E.     Plaintiff's Lawsuit ................................................................................5

ARGUMENT .........................................................................................................6

I.     THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN
      DISTRICT OF CALIFORNIA.........................................................................6

      A.     Under *Atlantic Marine*, Forum-Selection Clauses Must Be
              Enforced In All But The Most Unusual Cases.......................................6

      B.     The Forum Selection Clause In The Ads Agreement Is Valid
              And Applies To Plaintiff's Claims In This Case ...................................7

II.    PLAINTIFF'S FIRST AND FOURTEENTH AMENDMENT
      CLAIM SHOULD BE DISMISSED.................................................................9

      A.     Google Is A Private Party, Not A State Actor Bound By The
              First And Fourteenth Amendments.......................................................10

      B.     Operating A Private Forum For Speech Is Not A "Public
              Function" That Transforms Google Into A State Actor.......................12

      C.     Google Is Not Engaged In The Public Function of "Running
              Elections".............................................................................................15

      D.     Plaintiff Cannot Assert A Claim For Declaratory Relief......................20

CONCLUSION ....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666 (1998) .......................19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................9, 10

*Associates & Aldrich Co. v. Times Mirror Co.*, 440 F.2d 133
    (9th Cir. 1971) .......................................................................20

*Atlantic Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49 (2013)...............*passim*

*Baird v. Sabre Inc.*, 2013 U.S. Dist. LEXIS 198757
    (C.D. Cal. July 25, 2013) .........................................................10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)...............................10

*Biltz v. Google, Inc.*, 2018 U.S. Dist. LEXIS 112632
    (D. Haw. July 6, 2018) ..............................................................8

*Brittain v. Twitter Inc.*, 2019 U.S. Dist. LEXIS 1519
    (D. Ariz. Jan. 4, 2019) ..............................................................9

*Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n.*, 531
    U.S. 288 (2001)................................................................12, 13

*Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205
    (9th Cir. 2002) .......................................................................13

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991) .........................8

*Casterlow-Bey v. Google Internet Search Engine Co.*, 2017 U.S. Dist.
    LEXIS 176156 (W.D. Wash. Sept. 26, 2017) .................................12

*Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939 (9th Cir. 2011) .......................15

*Chi. Joint Bd. v. Chi. Tribune Co.*, 435 F.2d 470 (7th Cir. 1970)...................18

*Columbia Broad. Sys., Inc. v. Democratic Nat'l Committee*,
    412 U.S. 94 (1973) ...........................................................2, 18, 19

*Cyber Promotions, Inc. v. Am. Online, Inc.*, 948 F. Supp. 436
    (E.D. Pa. 1996) .......................................................................12

*Davison v. Facebook, Inc.*, 370 F. Supp. 3d 621 (E.D. Va. 2019) ...........................12

*Ebeid v. Facebook, Inc.*, 2019 U.S. Dist. LEXIS 78876
  (N.D. Cal. May 9, 2019)................................................................12

*Feldman v. Google, Inc.*, 513 F. Supp. 2d 229 (E.D. Pa. 2007)...................................8

*Forbes v. Facebook, Inc.*, 2016 U.S. Dist. LEXIS 19857
  (E.D.N.Y. Feb. 18, 2016) .............................................................12

*Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30 (D.D.C. 2019) ...............11

*Green v. America Online*, 318 F.3d 465 (3d Cir. 2003) ........................................11

*Green v. YouTube, LLC*, 2019 U.S. Dist. LEXIS 55577
  (D.N.H. Mar. 13, 2019) ...............................................................12

*Howard v. Am. Online, Inc.*, 208 F.3d 741 (9th Cir. 2000)......................................11

*Song fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53 (D.D.C. 2014)....................................8

*Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974)................................10, 13

*Jayne v. Google Internet Search Engine Founders*, 2007 U.S. Dist.
  LEXIS 71954 (M.D. Pa. Sept. 27, 2007) ........................................12

*Johnson v. Quality Loan Serv. Corp.*, 2018 U.S. Dist. LEXIS 223033
  (C.D. Cal. Dec. 18, 2018).............................................................6, 20

*Kim v. Apple, Inc.*, 2014 U.S. Dist. LEXIS 91522
  (D.D.C. July 7, 2014) ..................................................................12

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) .................................................2

*Kumar v. RBS Fin. Prods.*, 2014 U.S. Dist. LEXIS 194924
  (C.D. Cal. Dec. 4, 2014).................................................................7

*La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981 (S.D. Tex. 2017).......................20

*Lee v. Katz*, 276 F.3d 550 (9th. Cir 2002) .......................................................12

*Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921 (2019) .................*passim*

*Miami Herald Publ'g Co v. Tornillo*, 418 U.S. 241 (1974) ..............................19, 20

*Nat'l Collegiate Athletic Assn. v. Tarkanian*, 488 U.S. 179 (1988) .........................10

*Nixon v. Condon*, 286 U.S. 73 (1932) ....................................................16, 17

*Nyabwa v. FaceBook*, 2018 U.S. Dist. LEXIS 13981
    (S.D. Tex. Jan. 26, 2018)...............................................................12

*Person v. Google Inc.*, 456 F. Supp. 2d 488 (S.D.N.Y. 2006) ...................8

*Prager Univ. v. Google LLC*, 2018 U.S. Dist. LEXIS 51000
    (N.D. Cal. Mar. 26, 2018) ..................................................11, 13, 15

*Rojas-Lozano v. Google, Inc.*, 2015 U.S. Dist. LEXIS 106726
    (D. Mass. Aug. 12, 2015) ..............................................................8

*Seaman v. YouTube et al.*, No. 18-CV-833 (E.D. Va. Apr. 5, 2019) ........9

*Shulman v. Facebook.com*, 2017 U.S. Dist. LEXIS 183110
    (D.N.J. Nov. 6, 2017)...................................................................12

*Smith v. Allwright*, 321 U.S. 649 (1944) .............................................16, 17

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001)............10

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) ..............................6

*Terry v. Adams*, 345 U.S. 461 (1953)..................................................16, 17

*TradeComet.com, LLC v. Google, Inc.*, 693 F. Supp. 2d 370
    (S.D.N.Y. 2010) ...........................................................................8

*Yeo v. Town of Lexington*, 131 F.3d 241 (1st Cir. 1997)...........................18

*Young v. Facebook, Inc.*, 2010 U.S. Dist. LEXIS 116530
    (N.D. Cal. Oct. 25, 2010) ............................................................12

*Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433 (S.D.N.Y. 2014)...............20

**STATUTES**

28 U.S.C. § 1404(a) .......................................................................1, 6, 7

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................1, 9

C.D. Cal. Civ. Local Rule 7-3 ...........................................................6

1

# CONSTITUTIONAL PROVISIONS

2   U. S. Const. amend. I ............................................................................*passim*

3   U. S. Const. amend. XIV ......................................................................*passim*

4   U. S. Const. amend. XV ...............................................................................17

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**INTRODUCTION**

Plaintiff, the Tulsi Now! presidential campaign for Representative Tulsi Gabbard of Hawaii, asserts that its First and Fourteenth Amendment rights were violated because Google suspended Plaintiff's advertising account for a few hours following an unusual spike in account activity. Google explained to Plaintiff that the brief suspension (and reinstatement shortly thereafter) were the result of Google's normal fraud-detection operations. Yet Plaintiff now contends that Google was attempting to silence the campaign because of Ms. Gabbard's political views. Plaintiff offers no factual allegations to support that baseless charge, nor could it. More importantly for present purposes, Plaintiff's First Amendment claim is both filed in the wrong court and wholly without merit.

Under the clear terms of the governing agreement between Plaintiff and Google, any litigation arising from or relating to Plaintiff's advertising account must proceed in the state and federal courts of Santa Clara County. This binding forum-selection clause requires that the case be transferred to the Northern District of California under 28 U.S.C. § 1404(a). *See Atlantic Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49 (2013).

If this court were to consider the merits, however, it would have to dismiss Plaintiff's case under Fed. R. Civ. P. 12(b)(6). To sustain a First Amendment claim, a plaintiff must demonstrate that it has been aggrieved by state action, but there is none here. As the Supreme Court recently confirmed, a private party like Google "who opens its property for speech by others is not transformed by that fact alone into a state actor" and "is not subject to First Amendment constraints on its editorial discretion." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1926

(2019). Plaintiff suggests that this case is different because Google is somehow "running elections" by setting rules for those placing election ads on its private online service. That idea is wrong on its face and under controlling law. *See Columbia Broad. Sys., Inc. v. Democratic Nat'l Committee*, 412 U.S. 94, 119 (1973) (rejecting First Amendment claim based on broadcaster's rules limiting political advertising).

This case should not have been filed in this Court—or at all. It should be transferred or, in the alternative, dismissed with prejudice.

## BACKGROUND

### A.    Google Ads

Defendant Google LLC operates Google Ads (formerly "AdWords"), a popular online advertising service that distributes advertisements in Google's search results, on YouTube, and on the Google Display Network, which comprises various websites, videos, and apps. First Amended Complaint ("FAC") ¶ 5. As Plaintiff acknowledges, Google Ads is governed by the Google LLC Advertising Program Terms ("Ads Agreement" or "Agreement") and its incorporated policies, which advertisers agree to before creating Google Ads accounts. FAC ¶ 96; Declaration of Lauren Gallo White ("White Decl."), Exhibit 1 (Ads Agreement).[1]

The Ads Agreement allows Google to "suspend Customer's ability to participate in the Programs at any time." White Decl., Exhibit 1 ¶ 12. The Agreement also incorporates Google's Ad Policies, *id.* ¶ 2, which set forth

---

[1] The FAC quotes from, references, and relies upon the Ads Agreement and its related policies and support pages. Because these documents are incorporated by reference into the FAC, the Court may properly consider them. *See, e.g., Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

1   requirements for advertising on the Google Network. Google's Help Center further

2   provides general Google Ads support and additional information about account

3   administration and security, including account suspensions. There, Google

4   explains: "If we detect suspicious or fraudulent payment activity on your account,

5   we may restrict how much the account can spend or suspend the account." White

6   Decl., Exhibit 2.

7         The Ads Agreement also includes a forum-selection clause in all-caps in

8   which the parties agree to litigate "all claims arising out of or relating to these

9   terms … in the federal or state courts of  Santa Clara County." *Id.*, Exhibit 1 ¶ 14.

10        **B.      Plaintiff Tulsi Now, Inc. and Its Advertising On Google Ads**

11        Plaintiff Tulsi Now, Inc. ("Tulsi Now") is the principal campaign committee

12   for Democratic Presidential Candidate Tulsi Gabbard ("Gabbard"), who currently

13   serves as congresswoman from Hawaii. FAC ¶¶ 20. Plaintiff alleges that Ms.

14   Gabbard has been critical of Google during her presidential campaign. FAC ¶¶ 92-

15   94.

16        Following the 2016 presidential election, Google began verifying the

17   identity of advertisers purchasing federal election ads on Google in the United

18   States. FAC ¶¶ 62-87. Google's process requires such advertisers to submit

19   identifying information, including their Google Ads Customer ID and campaign

20   name, and to confirm that their campaign is based in the United States and is

21   legally permitted to purchase election ads. *Id.* ¶ 85. In early 2019, Plaintiff set up a

22   Google Ads account and accepted the Ads Agreement. FAC ¶ 96. On February 18,

23   2019, Google verified Plaintiff's account as eligible to run election advertisements

24   in the United States. FAC ¶¶ 97-98. Plaintiff does not allege that this verification

1    modified the terms of the Ads Agreement or restricted Google's ability to suspend

2    Ads accounts for any reason and at any time. Nor does Plaintiff allege that

3    Google's verification process was mandated or required by the government.

4    **C.    Google's Six-Hour Suspension of Plaintiff's Account**

5         Plaintiff does not allege that the campaign had any issues with its Google

6    Ads account until June of 2019. Plaintiff alleges that following the Democratic

7    National Debate, held on June 26-27, 2019, Ms. Gabbard was the most searched-

8    for candidate on Google's search engine. FAC ¶ 95. To capitalize on this supposed

9    increase in interest, Plaintiff claims that the campaign "purchased ads to display

10   when people searched Google for certain terms related to Gabbard." FAC ¶ 100.

11        Shortly after this unusual spike in advertising purchases, Google temporarily

12   suspended Tulsi Now's account pending an investigation. FAC ¶ 102. Google

13   explained to Plaintiff that the account was suspended due to "problems with billing

14   information or violations of our advertising policies"; because Google "identified

15   suspicious behavior in the payment activity in your account"; and it asked Gabbard

16   "to verify [Plaintiff's] billing information and policy compliance." *Id.* ¶¶ 105-107.

17   These messages were sent to the email account associated with Plaintiff's account.

18   As Plaintiff concedes, the suspension was lifted just hours later. *Id.* ¶¶ 9, 114.

19        Plaintiff asserts that this brief suspension was motivated by Google's wish to

20   silence Tulsi Now because Ms. Gabbard has been critical of Google during her

21   campaign. But the FAC offers no facts supporting the idea that the suspension was

22   due to anything other than what Google described. Plaintiff does not deny that

23   there were problems with its billing information or that there was an unusual and

24   potentially suspicious spike in advertising purchases immediately preceding the

1  temporary suspension. Plaintiff identifies no other problems with the operation of

2  its Google Ads account and does not claim that Google had ever previously taken

3  any action that interfered with the campaign's ability to place ads on Google's

4  network. Nor does Plaintiff allege that any website created by the campaign or Ms.

5  Gabbard was unavailable in Google's organic search results.

6  ### D.   Plaintiff's Allegations Regarding Gmail Spam Filtering

7        The only other allegations Plaintiff offers about Google's actions in regard

8  to the campaign is the passing suggestion that "[Ms.] Gabbard has learned that

9  email communications sent by [Plaintiff] are classified as Spam by Google's Gmail

10  product at disproportionately high rates." FAC ¶ 117. This allegation is unadorned

11  and unexplained. The FAC does not explain what "disproportionally high rates" is

12  supposed to mean, what comparisons were done with other political campaigns or

13  advertisers, or what basis Ms. Gabbard has for alleging this supposedly

14  disproportionate spam classification.[2]

15  ### E.   Plaintiff's Lawsuit

16        On July 25, 2019, Plaintiff filed this lawsuit, though not before sharing a

17  copy of its original complaint with the New York Times. In its original complaint,

18  Plaintiff transformed what it admits was a few-hours-long suspension of its Google

19  Ads account into seven causes of action, including free speech claims under the

20  U.S. and California Constitutions, claims under the Unruh Act, the Lanham Act,

21  and California's Unfair Competition Law, and a claim for breach of the implied

22  ───────────────

23  [2] Spam" is defined generally as unsolicited bulk email messages. Google maintains detailed Sender Guidelines that explain how to avoid having emails

24  classified as "spam." *See* White Decl., Exhibit 3. Plaintiff does not allege whether any of the emails that Google's system allegedly classified as "spam" were, in fact, "spam" under Google's policies.

covenant of good faith and fair dealing. Following the parties' conference pursuant to Local Rule 7-3, Plaintiff abandoned all but one of these claims and agreed to file an amended complaint asserting a single substantive claim for violation of the First and Fourteenth Amendments. FAC ¶¶ 142-51. The FAC also asserts a derivative claim for declaratory and injunctive relief based on the same supposed violation. *Id.* ¶¶ 152-156.

**ARGUMENT**

**I.    THIS CASE SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA**

    **A.    Under *Atlantic Marine*, Forum-Selection Clauses Must Be Enforced In All But The Most Unusual Cases**

A court may transfer a civil action to another federal judicial district where the case could have been brought "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a); *see generally Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). But where, as here, a transfer motion is based on a valid forum-selection clause, certain "adjustments" to the standard §1404(a) analysis are "required." *Atlantic Marine Constr. Co. v. U.S. District Court*, 571 U.S. 49, 62 (2013). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a §1404(a) motion be denied." *Id.*

As the Supreme Court has explained, the "presence of a valid forum-selection clause requires district courts to adjust their usual §1404(a) analysis in three ways." *Atlantic Marine*, 571 U.S. at 63. Two of those are directly relevant here: "First, the

plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* "Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Id.* at 64. The upshot of these adjustments is that when a forum-and-venue-selection clause is in play, "a district court may consider arguments about public-interest factors only." *Atlantic Marine*, 571 U.S. at 64. But, "[b]ecause those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.*; *see also Kumar v. RBS Fin. Prods.*, 2014 U.S. Dist. LEXIS 194924, at *16 (C.D. Cal. Dec. 4, 2014) (Wilson, J.) (enforcing forum selection clause to transfer case).

### B.    The Forum Selection Clause In The Ads Agreement Is Valid And Applies To Plaintiff's Claims In This Case

The Ads Agreement governs Plaintiff's use of Google Ads. FAC ¶ 96. The agreement is a prerequisite for, among other things, creating a Google Ads account and serving ads on Google's network. White Decl., Ex. 1, preamble. Plaintiff accepted the terms of the Agreement when it created its Google Ads account. *See* FAC ¶ 96.

The Ads Agreement expressly requires that "all claims arising out of or relating to these terms or the programs will be litigated exclusively in the federal or state courts of Santa Clara County." White Decl., Exhibit 1 ¶ 14. There is no question that this forum selection clause is valid and binding upon the parties. *Cf. Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589 (1991). In similar cases

1   brought by Google Ads customers, courts around the country have consistently

2   found the Ads Agreement—including the forum-and-venue-selection clause—to be

3   enforceable, and have transferred the cases to the Northern District of California on

4   that basis. *See, e.g.*, *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 245-46 (E.D. Pa.

5   2007) (upholding forum selection clause in the AdWords Agreement and

6   transferring case to the Northern District of California); *Person v. Google Inc.*, 456

7   F. Supp. 2d 488, 495 (S.D.N.Y. 2006) (same); *see also TradeComet.com, LLC v.*

8   *Google, Inc.*, 693 F. Supp. 2d 370, 374, 381 (S.D.N.Y. 2010) (same), *aff'd in part*,

9   647 F.3d 472 (2d Cir. 2011), *aff'd in part*, 435 F. App'x 31 (2d Cir. 2011); *cf. Biltz*

10   *v. Google, Inc.*, 2018 U.S. Dist. LEXIS 112632, at *12 n.4 (D. Haw. July 6, 2018)

11   (enforcing identical forum selection clause in YouTube terms of service agreement);

12   *Song fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53, 61-63 (D.D.C. 2014) (same); *Rojas-*

13   *Lozano v. Google, Inc.*, 2015 U.S. Dist. LEXIS 106726, at *12 (D. Mass. Aug. 12,

14   2015) (enforcing identical forum selection clause in Google agreement).

15       It is equally indisputable that Plaintiff's lawsuit—which is premised on

16   Google's decision to suspend Plaintiff's Ads account—"aris[es] out of or relat[es]

17   to" the Google Advertising Program. Through this provision, Google and Plaintiff

18   agreed to litigate claims like this one in the courts of Santa Clara County. This

19   forum-selection clause rules out any argument that Plaintiff's unilateral choice to

20   file suit in this Court should carry any weight in the 1404(a) analysis. Nor do any

21   public interest factors favor litigation in this Court. To the contrary, this case has no

22   meaningful connection with this District. Ms. Gabbard is, of course, a resident of

23   Hawaii, and Plaintiff itself does not allege any facts that link the Tulsi Now!

24   campaign to the Central District of California. *See* FAC ¶ 20. Finally, there is no

issue with applying a forum-selection provision to First Amendment claims—and courts have routinely done just that in similar cases. *See, e.g.*, *Seaman v. YouTube et al.*, No. 18-CV-833, Memorandum Order (E.D. Va. Apr. 5, 2019) (enforcing forum selection clause to transfer First Amendment claim against YouTube and Google based on YouTube's suspension of plaintiff's account); *Brittain v. Twitter Inc.*, 2019 U.S. Dist. LEXIS 1519, at *10 (D. Ariz. Jan. 4, 2019) (enforcing forum selection clause to transfer First Amendment claim against Twitter based on its suspension of plaintiff's accounts).

In short, this is not one of the "most exceptional cases" where the parties' forum-selection agreement should not be given controlling weight. *Atlantic Marine*, 571 U.S. at 63. This lawsuit should be transferred to the San Jose Division of the Northern District of California.

## II.     PLAINTIFF'S FIRST AND FOURTEENTH AMENDMENT CLAIM SHOULD BE DISMISSED

Even if Plaintiff could get around the forum-selection clause, its claim fails as a matter of law.  To survive a motion under Rule 12(b)(6), a plaintiff must do more than offer "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Baird v. Sabre Inc.*, 2013 U.S. Dist. LEXIS 198757, at *5 (C.D. Cal. July 25, 2013) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). Here, Plaintiff's cause of action under the First and Fourteenth Amendments fails to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). And because the legal defects with Plaintiff's claim cannot be cured, dismissal should be with prejudice.

### A. Google Is A Private Party, Not A State Actor Bound By The First And Fourteenth Amendments

The FAC offers a single claim: that Google violated Plaintiff's rights under the First and Fourteenth Amendments. FAC ¶ 145. As an initial matter, any suggestion that Google was attempting to abridge Plaintiff's speech by briefly suspending its ads account for a few hours in order to protect Plaintiff from potential fraud defies logic. But Plaintiff's claim faces a fatal threshold problem: Google is a private company, not a state actor, and it is not bound by these constitutional limitations on the power of the government.

"[T]he Free Speech Clause prohibits only *governmental* abridgment of speech . . . [it] does not prohibit *private* abridgement of speech." *Halleck*, 139 S. Ct. at 1928. The same is true of the Fourteenth Amendment's Due Process Clause. *See Nat'l Collegiate Athletic Assn. v. Tarkanian*, 488 U.S. 179, 191 (1988) ("Embedded in our Fourteenth Amendment jurisprudence is a dichotomy between state action, which is subject to scrutiny under the Amendment's Due Process Clause, and private conduct, against which the Amendment affords no shield, no matter how unfair that conduct may be."); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349 (1974) (noting the "essential dichotomy set forth in [the Fourteenth] Amendment between deprivation by the State, subject to scrutiny under its provisions, and private conduct, however discriminatory or wrongful, against which the Fourteenth Amendment offers no shield"). As the Supreme Court recently explained, "the state-action doctrine enforces a critical boundary between the

government and the individual, and thereby protects a robust sphere of individual liberty. Expanding the state-action doctrine beyond its traditional boundaries would expand governmental control while restricting individual liberty and private enterprise." *Halleck*, 139 S. Ct. at 1934.

Applying this principle, an unbroken line of cases have rejected similar efforts to categorize Google and other private online service providers as state actors under the First Amendment. *See, e.g.*, *Howard v. Am. Online, Inc.*, 208 F.3d 741, 754 (9th Cir. 2000) (allegations claiming that AOL was a "quasi-public utility" or "public trust" were "insufficient to hold that AOL is an 'instrument or agent' of the government"); *Green v. America Online*, 318 F.3d 465, 472 (3d Cir. 2003) ("AOL is a private, for profit company and is not subject to constitutional free speech guarantees."); *Prager Univ. v. Google LLC*, 2018 U.S. Dist. LEXIS 51000, at *16-17 (N.D. Cal. Mar. 26, 2018) (dismissing First Amendment claim against YouTube for lack of state action); *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 40 (D.D.C. 2019) (holding that Google and other online services "are private businesses that do not become 'state actors' based solely on the provision of their social media networks to the public").[3]  There is no reason for a different result in this case.

---

[3] *See also, e.g.*, *Ebeid v. Facebook, Inc.*, 2019 U.S. Dist. LEXIS 78876, at *15-16 (N.D. Cal. May 9, 2019) (dismissing constitutional claim against Facebook for failure to establish that Facebook is a state actor); *Davison v. Facebook, Inc.*, 370 F. Supp. 3d 621 (E.D. Va. 2019) (same); *Nyabwa v. FaceBook*, 2018 U.S. Dist. LEXIS 13981, at *1-2 (S.D. Tex. Jan. 26, 2018) (same); S*hulman v. Facebook.com*, 2017 U.S. Dist. LEXIS 183110, at *8-9 (D.N.J. Nov. 6, 2017) (same); *Green v. YouTube, LLC*, 2019 U.S. Dist. LEXIS 55577, at *10 (D.N.H. Mar. 13, 2019) (dismissing First Amendment claims against YouTube for lack of state action); *Casterlow-Bey v. Google Internet Search Engine Co.*, 2017 U.S. Dist.

(continued...)

1

2

**B.     Operating A Private Forum For Speech Is Not A "Public Function" That Transforms Google Into A State Actor**

3      The Supreme Court has made clear that there are only "a few limited

4 circumstances" in which a private entity can be treated as a state actor. *Halleck*, 139

5 S. Ct. at 1928. All of those require "such a 'close nexus between the state and the

6 challenged action' that seemingly private behavior 'may be fairly treated as that of

7 the State itself." *Brentwood Academy v. Tennessee Secondary Sch. Athletic As'sn.*,

8 531 U.S. 288, 295-96 (2001); *see also, e.g.*, *Lee v. Katz*, 276 F.3d 550, 554, 555 n.4

9 (9th Cir. 2002) (explaining that, "in *Brentwood* the Court treated 'nexus' as a status

10 that is found in all cases where private action is attributable to the State").

11      In this case, Plaintiff alleges that Google is a state actor because it supposedly

12 "perform[s] an exclusively and traditionally public function." FAC ¶ 144. But this

13 public function test—which applies when a private entity "has been delegated a

14 public function by the State," *Brentwood*, 531 U.S. at 296—is highly circumscribed.

15 _____

16 LEXIS 176156, at *1 (W.D. Wash. Sept. 26, 2017), report and recommendation

adopted, 2017 U.S. Dist. LEXIS 175302 (W.D. Wash. Oct. 23, 2017) (Google "is

17 not a state actor and so is not liable under § 1983"); *Forbes v. Facebook, Inc.*, 2016

U.S. Dist. LEXIS 19857, at *2-6 (E.D.N.Y. Feb. 18, 2016) (dismissing Section

18 1983 claims against Facebook for failure to allege action under color of state law);

*Kim v. Apple, Inc.*, 2014 U.S. Dist. LEXIS 91522, at *5 (D.D.C. July 7, 2014) ("to

19 the extent that plaintiff invokes the First Amendment in his complaint, the Court

notes that the First Amendment does not apply to a private entity like Apple,

20 Inc."), *aff'd* 582 F. App'x 4 (D.C. Cir. 2014); *Young v. Facebook, Inc.*, 2010 U.S.

Dist. LEXIS 116530, at *5-8 (N.D. Cal. Oct. 25, 2010) (Facebook is not a state

21 actor); *Jayne v. Google Internet Search Engine Founders*, 2007 U.S. Dist. LEXIS

71954, at *3 & n.4 (M.D. Pa. Sept. 27, 2007), *aff'd*, 263 F. App'x 268 (3d Cir.

22 2008) (dismissing with prejudice civil rights claim against Google because "[t]here

is no valid assertion that [Google's actions are] somehow a violation of the law or

23 the Constitution"); *Cyber Promotions, Inc. v. Am. Online, Inc.*, 948 F. Supp. 436,

441-45 (E.D. Pa. 1996) ("AOL is not a state actor" and "there has been no state

24 action by AOL's activities"). This is not an exhaustive list.

As the Supreme Court explained in *Halleck*: "it is not enough that the function serves the public good or the public interest in some way. Rather, to qualify as a traditional, exclusive public function within the meaning of our state-action precedents, the government must have traditionally *and* exclusively performed the function." 139 S. Ct. at 1928-1929; *accord Jackson*, 419 U.S. at 352 (rejecting argument that "state action is present because respondent provides an essential public service required to be supplied on a reasonably continuous basis").

*Halleck* squarely forecloses Plaintiff's public function argument. The function at issue there was "the operation of public access channels on a cable system." *Halleck*, 139 S. Ct. at 1930. The Court had little trouble concluding that this function had not "traditionally and exclusively been performed by the government." *Id.* at 1929. That conclusion applies even more strongly to Google Ads. Plaintiff does not and could not allege that operating an online advertising service is something that the government has *ever* done—much less that it is a *traditional* and *exclusive* governmental function. To the contrary, publishing online advertising, like the private newsgathering discussed in *Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205 (9th Cir. 2002), is a "quintessential private activity, jealously guarded from impermissible government influence." *Id*. at 1214; *cf. Prager Univ.*, 2018 U.S. Dist. LEXIS 51000, at *16-17 ("Plaintiff does not point to any persuasive authority to support the notion that Defendants, by creating a 'video-sharing website' and subsequently restricting access to certain videos that are uploaded on that website, have somehow engaged in one of the 'very few' functions that were traditionally 'exclusively reserved to the State.'") (citation omitted).

As in *Halleck*, Plaintiff tries to "widen the lens" (139 S. Ct. at 1930) by claiming that "Google serves as a state actor by performing an exclusively and traditionally public function by regulating free speech within a public forum[.]" FAC ¶ 144 (alleging that Google "intentionally and openly dedicat[ed] its platform for public use and public benefit, inviting the public to utilize Google as a forum for free speech"). But this approach was expressly rejected by *Halleck*, which explained that this loose use of the term "public forum" "mistakenly ignores the threshold state-action question." 139 S. Ct. at 1930. A "public forum" for First Amendment purposes arises "[w]hen *the government* provides a forum for speech." *Id*. (emphasis added). "By contrast, when a *private* entity provides a forum for speech, the private entity is not ordinarily constrained by the First Amendment because the private entity is not a state actor. The private entity may thus exercise editorial discretion over the speech and speakers in the forum." *Id*. (emphasis added). The Court further held that "hosting speech by others is not a traditional, exclusive public function and does not alone transform private entities into state actors subject to First Amendment constraints." *Id*.

In short, the "Constitution does not disable private property owners and private lessees from exercising editorial discretion over speech and speakers on their property," *id*. at 1931, and Plaintiff's effort to transform Google into a state actor based on its operation of a private platform for commercial speech fails as a matter of law. *Accord Prager Univ*., 2018 U.S. Dist. LEXIS 51000, at *16 (rejecting argument that "a private property owner who operates its property as a public forum for speech is subject to judicial scrutiny under the First Amendment").

**C.  Google Is Not Engaged In The Public Function of "Running Elections"**

Perhaps recognizing that *Halleck* forecloses its "public forum" argument, Plaintiff tries a new tack in the FAC. Plaintiff alleges that "[t]hrough its Verified Political Advertiser Program and other express actions, Google has taken and continues to take State action by exercising control over a traditional State function: running elections." FAC ¶ 12; *see also id.* at ¶¶ 127, 144. This argument is frivolous.

As an initial matter, any effort by Plaintiff to premise a First Amendment claim on Google's process for verifying election advertising fails because Plaintiff does not actually contend that it was harmed by that verification process. Nor could it. After all, Plaintiff acknowledges that the Tulsi Now! campaign was duly verified, and the campaign does not allege that the verification requirement caused it any problems whatsoever. FAC ¶ 98. Plaintiff's ability to advertise on Google Ads thus was not restricted as a result of Google's requirements. The only injury Plaintiff alleges resulted from the brief suspension of the campaign's account following a suspicious spike in spending. Because Plaintiff suffered no injury at the hands of Google's verification procedures, it has no basis to challenge those procedures. *See, e.g.*, *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 944, 954-55 (9th Cir. 2011) (holding that a plaintiff must allege that he "personally suffered discrimination" as a result of the challenged conduct in order to establish standing sufficient to state a claim arising from that conduct).

But even if the verification process had some actual bearing on this case, it would not create state action or give rise to a First Amendment claim against

1   Google. Plaintiff relies on a set of cases finding that "running elections" is a

2   traditional public function. *See Halleck*, 139 S. Ct. at 1929 (citing *Smith v.*

3   *Allwright*, 321 U.S. 649 (1944); *Terry v. Adams*, 345 U.S. 461 (1953); *Nixon v.*

4   *Condon*, 286 U.S. 73 (1932)). But running elections bears no resemblance to what

5   Google is doing by setting rules for campaign or other political advertising on its

6   platform. As the cases cited in *Halleck* make clear, a nominally private party is

7   engaged in the public function of "running elections" only where the government

8   has assigned it an integral role in managing an actual election, such as by running

9   primaries responsible for the selection of candidates for public office. *See Condon*,

10  286 U.S. at 84 ("the statute lodged the power in a committee, which excluded the

11  petitioner and others of his race, not by virtue of any authority delegated by the

12  party, but by virtue of an authority originating or supposed to originate in the

13  mandate of the law"); *Smith*, 321 U.S. at 664-65 ("We think that this statutory

14  system for the selection of party nominees for inclusion on the general election

15  ballot makes the party which is required to follow these legislative directions an

16  agency of the State in so far as it determines the participants in a primary election.");

17  *Terry*, 345 U.S. at 484 (plurality op.) ("when a state structures its electoral apparatus

18  in a form which devolves upon a political organization the uncontested choice of

19  public officials, that organization itself, in whatever disguise, takes on those

20  attributes of government which draw the Constitution's safeguards into play").[4]

21  _____

22  [4] These cases were ones in which the Supreme Court rejected racist efforts in the Jim Crow South to disenfranchise African-American voters by excluding them

23  from voting in state primary elections. The fact that the political parties running the primaries were nominally private actors did not permit this obvious resistance of

24  the Fifteenth Amendment—especially where the State was a willing partner to the scheme. *See, e.g.*, *Terry*, 345 U.S. 469-70 ("The effect of the whole procedure …

(continued...)

There is nothing like that here. Plaintiff does not (and could not) allege that Google is running or participating in any actual election, much less that it is part of some state-sponsored effort to limit the right to vote or participate in the electoral process. Nor does Plaintiff suggest that Google has any control over who is permitted to cast or appear on a ballot. *Accord Smith*, 321 U.S. at 651 (claim based on respondents' failure "to give petitioner a ballot or to permit him to cast a ballot"); *Terry*, 345 U.S. at 462 (claim based on respondents excluding African Americans from voting in parties' primaries); *Nixon*, 286 F.3d at 81 (same). Instead, Plaintiff's theory is based on Google's policies for accepting (or limiting) *advertising* on its private platform, including by requiring accounts that wish to run campaign ads to identify themselves and confirm that they are based in the United States and legally authorized to purchase such ads. FAC ¶¶ 12, 82-86.

This is not a public function that turns Google into a state actor. The category of "running elections" simply does not include making available an advertising platform where ads, including political ads, can be displayed. While elections have traditionally been state run, there is no tradition in this country of the government operating platforms for the distribution of political or campaign advertising. To the contrary, such advertising has almost always been published on *private* platforms:

---

is to do precisely that which the Fifteenth Amendment forbids—strip Negroes of every vestige of influence in selecting the officials who control the local county matters that intimately touch the daily lives of citizens."); *Smith*, 321 U.S. at 664 ("This grant to the people of the opportunity for choice is not to be nullified by a State through casting its electoral process in a form which permits a private organization to practice racial discrimination in the election."). This line of cases in no way supports the unprecedented argument that truly private online services become state actors by publishing—or putting limits on—election-related advertising.

1    newspapers, magazines, radio stations, television channels, and more recently

2    websites, mobile apps, and search engines. There is no basis to treat the publication

3    of such advertisements as any more of a public function than operating a general

4    platform for speech or running a public-access cable channel. *Halleck*, 139 S. Ct. at

5    1929. None of these are traditional—much less *exclusive*—government activities.

6         Not surprisingly, therefore, courts have consistently rejected efforts to find

7    state action based on a private publisher's handling of political advertising. *See, e.g.*,

8    *Yeo v. Town of Lexington*, 131 F.3d 241 (1st Cir. 1997) (*en banc*) (holding that

9    student newspaper and yearbook in public high school were not engaged in state

10   action and thus could not be compelled to publish political advertisements); *Chi.*

11   *Joint Bd. v. Chi. Tribune Co.*, 435 F.2d 470, 476 (7th Cir. 1970) (holding that

12   private newspaper was not required by the First Amendment to publish

13   advertisements on political and social issues: "the defendant newspaper publishers

14   clearly are not engaged in the exercise of any governmental function, nor do they

15   possess or exercise any delegated power of a governmental nature").

16        The Supreme Court's decision in *Columbia Broadcasting System, Inc. v.*

17   *Democratic National Committee*, 412 U.S. 94 (1973), is directly on point in holding

18   that the First Amendment does not limit a private publisher's right to decide whether

19   and how to sell space for political advertising. There, the Democratic National

20   Committee sought to compel radio and television broadcasters to sell advertising

21   time "for the solicitation of funds and for comment on public issues." *Id.* at 98. This

22   First Amendment claim failed for lack of state action. Despite the fact that

23   broadcasters are licensed and heavily regulated by the federal government, the Court

24   rejected the argument that broadcasters are "instrumentalities of the Government for

First Amendment purposes." *Id.* at 115 (plurality op.); *see also id*. at 119 ("it cannot be said that the Government is a 'partner' to the action of the broadcast licensee"). *CBS* confirms that Plaintiff's effort to subject Google's handling of political advertising to the First Amendment fails as a matter of law.

In fact, Plaintiff inverts the relevant First Amendment protections. As Justice Stewart warned in *CBS*, to hold "that broadcaster action is governmental action" would "simply strip broadcasters of their own First Amendment rights." *Id.* at 139 (Stewart, J. concurring); *accord id.* at 115-119 (plurality op.) ("[I]t would be anomalous for us to hold, in the name of promoting the constitutional guarantees of free expression, that the day-to-day editorial decisions of broadcast licensees are subject to the kind of restraints urged by respondents. To do so in the name of the First Amendment would be a contradiction."). The First Amendment protects the editorial judgments of publishers. *See Miami Herald Publ'g Co v. Tornillo*, 418 U.S. 241, 258 (1974) ("The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials—whether fair or unfair—constitute the exercise of editorial control and judgment."); *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 674 (1998) ("When a public broadcaster exercises editorial discretion in the selection and presentation of its programming, it engages in speech activity."). This right applies to decisions about political speech and advertising—and is fully applicable to online platforms like Google. *See, e.g.*, *Tornillo*, 418 U.S. at 258 (state statute requiring newspapers to publish political speech violated the First Amendment "because of its intrusion into the function of editors"); *Associates & Aldrich Co. v. Times Mirror Co.*, 440 F.2d 133, 136 (9th Cir. 1971) (First

Amendment barred claim seeking to compel newspaper to run ads found to violate its editorial standards); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991-92 (S.D. Tex. 2017) ("online publishers have a First Amendment right to distribute others' speech and exercise editorial control on their platforms").

Beyond failing on its own terms, therefore, Plaintiff's effort to limit Google's editorial judgments about what advertisements can appear on its platform (and on what terms) runs headlong into Google's own First Amendment rights. *Accord Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433, 441 (S.D.N.Y. 2014) (First Amendment barred claims against internet search engine for excluding certain content from its search results). Either way, Plaintiff's claim fails as a matter of law.

**D.    Plaintiff Cannot Assert A Claim For Declaratory Relief**

"A claim for declaratory relief is not a stand-alone claim, but rather depends upon whether or not Plaintiff states some other substantive basis for liability." *Johnson v. Quality Loan Serv. Corp.*, 2018 U.S. Dist. LEXIS 223033, at *44 (C.D. Cal. Dec. 18, 2018). Because Plaintiff's claim for declaratory and injunctive relief (Count II) is predicated on its claim for violation of the U.S. Constitution—which fails on its own terms for the reasons discussed above—it too must be dismissed. *Id.*

**CONCLUSION**

For these reasons, this case should be transferred to the Northern District of California or, in the alternative, dismissed without further leave to amend.

1  Dated: October 18, 2019

WILSON SONSINI GOODRICH & ROSATI,

2

Professional Corporation

3

By: /s/ *Lauren Gallo White*

4

5

Attorneys for Defendant
GOOGLE LLC

6

7

DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile:  (650) 565-5100
Email:       dkramer@wsgr.com
                  lwhite@wsgr.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of October, 2019, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. As such, this document was served on all counsel who are deemed to have consented to electronic service.

*/s/ Lauren Gallo White*